[No. A132773. First Dist., Div. Four. June 22, 2012.]

JOSE ROBLES, Plaintiff and Appellant, v.
EMPLOYMENT DEVELOPMENT DEPARTMENT et al., Defendants and
Respondents.

**COUNSEL**

Gary S. Garfinkle and Maria J. Garfinkle for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, and Cheryl L. Feiner, Deputy Attorney General, for Defendants and Respondents.

**OPINION**

**REARDON, J.**—Appellant Jose Robles applied unsuccessfully for unemployment compensation benefits after his employment was terminated effective January 5, 2010. His employer did not oppose the application or appear at the administrative hearings. The trial court adopted the administrative findings and denied Robles's petition for writ of administrative mandate. As a matter of law, the record does not demonstrate that Robles was terminated because of misconduct within the meaning of Unemployment Insurance Code section 1256 (section 1256). Additionally, Robles's employer did not overcome the statutory presumption that he was discharged for reasons other than misconduct. Accordingly, Robles was not disqualified for unemployment compensation benefits and we reverse the judgment.

# I. FACTUAL BACKGROUND

## A. *Underlying Facts Pertaining to This Case*

Jose Robles testified without contradiction to the following at the hearing before an administrative law judge (ALJ) of respondent California Unemployment Insurance Appeals Board (Board): He worked as a service technician for Liquid Environmental Solutions for four years until his termination on January 5, 2010. His job was to collect food grease from restaurants and other food outlets. His pay was $20.75 an hour.

Robles's supervisor called him on that last day for a meeting and told him he was suspended because of "the incident." The incident related to Robles's attempt to buy shoes for a friend in need at the Red Wing Shoes store, where company employees buy workshoes for the job every year with a $150 shoe allowance. Robles asked the clerk if she would measure his friend's foot because he "intended to give it to my friend" who needed shoes. Robles reasoned that he had a good pair of shoes and his friend needed them more than he did. The clerk told Robles "that was not possible."

Robles explained that he did not have any "malintention [*sic*] of anything." He knew the allowance was for him, but he could afford to give it to a friend in need and the company would not be jeopardized because he had other shoes. His intent was to perform a noble gesture for a friend. In his view there was a misunderstanding of company policy but no misconduct. He "attempted to do it and then I was told I cannot do it, . . . let it go."

## B. *EDD Denial of Benefits*

Robles applied to respondent Employment Development Department (EDD) for unemployment benefits. The EDD's "Record of Claim Status Interview Misconduct" reflects no employer information about the incident; indeed, the EDD investigator did not speak with the employer and indicated a message was left for the employer to call within a certain timeframe, but the employer did not return the call. The document reflects that Robles was terminated for violating a company policy. It relates that Robles attempted to buy safety shoes for a friend at company expense. Robles said he did not get the shoes, and the company did not know the shoes were for a friend. According to the document, Robles was aware of the company policy and that the purchase was for employees only. There were no prior warnings. The record concludes that Robles willfully disregarded his employer's interests.

The EDD's notice of determination states that Robles's claim for unemployment benefits was denied because he "broke a reasonable employer rule."

After considering the available information, the EDD concluded Robles did not meet the qualifications for benefits.

## C. *Appeals*

Robles appealed the EDD's determination, denying that he broke a reasonable employer rule and stating his employer did not cite any specific rule that was broken and he was not aware of any such rule. Further, Robles protested that he was not provided with the unspecified "available information" mentioned in the EDD's decision, and such information had not been disclosed to him. Finally, Robles attested that he did not obtain an improper benefit or cause any harm to his employer.

Robles was permitted to view the file, for the first time, just prior to the hearing before the ALJ. Over Robles's[1] objection, the ALJ admitted the record of claim from the EDD file. Thereafter, Robles testified as summarized above. Robles also submitted a copy of his handwritten statement which his supervisor requested. Robles explained the following: "I asked the lady to have my friend's foot be measured for I had intended to give to him. He had a recent home accident and needed safety shoes. I honestly believed I can do the noble gesture and not jeopardize my own safety. I had a reserve pair of shoes at home and fully confident I would be wearing one in good condition for another year or more. [¶] After understanding the limits of what I can do with my entitlement of annual shoe allowance or privilege, I deeply regret what I attempted to undertake and firmly swear would not do it again."

Nonetheless, the supervisor suspended Robles on January 5, 2010. He received a final paycheck with no further explanation, effectively terminating him as of that date.

The ALJ found that Robles was discharged for misconduct connected with work. In particular, Robles understood that the employer intended that its employees use the annual shoe allowance to purchase shoes. Robles breached "a duty of good faith and fair dealing when he attempted to obtain shoes for a friend who was not an employee rather than using the allowance for himself. [¶] The claimant may have had good intentions toward his friend, but in his actions he breached a serious obligation he had to the employer."

Robles appealed to a panel of the Board, which reviewed the record and issued a decision adopting as its own the ALJ's issue statement, findings of fact and reasons for decision. The decision also noted that an employee's

---

[1] Robles started to explain his objection to the characterization in the investigator's report to the effect that claimant stated he was aware "that the purchase had to be for employees only." The ALJ said he would have a chance later to "tell me more about it."

misappropriation of employer property is conclusive evidence of misconduct and that here, the claimant was not allowed to use the shoe allowance for his friend because the clerk did not permit the sale.

### D. *Mandate Proceeding*

Finally, Robles petitioned for a writ of administrative mandate. Counsel requested a statement of decision which the court denied. The trial court denied the petition, concluding that the administrative findings were supported by the weight of the evidence. This appeal followed entry of judgment.

## II. DISCUSSION

### A. *Standard of Review*

When reviewing a decision of the Board, the superior court exercises independent judgment on the evidentiary record of the administrative proceedings and asks whether the findings of the administrative agency are supported by the weight of the evidence. (*Sanchez v. Unemployment Ins. Appeals Bd.* (1984) 36 Cal.3d 575, 585 [205 Cal.Rptr. 501, 685 P.2d 61] (*Sanchez*).) Ordinarily our review of the trial court's ruling on a writ of mandate is confined to asking whether the findings and judgment of the lower court are supported by substantial, credible and competent evidence. However, where the probative facts are not in dispute and clearly require a conclusion that differs from that of the trial court, we may disregard the latter's conclusions. (*Ibid.*) Issues of law, of course, are reviewed de novo.

### B. *No Misconduct*

Section 1256 states in part: "An individual is disqualified for unemployment compensation benefits if the director finds that he or she . . . has been discharged for misconduct connected with his or her most recent work."

 We liberally construe the provisions of the code to advance the legislative objective of reducing the hardship of unemployment. (*Sanchez, supra*, 36 Cal.3d at p. 584.) To this end, the term " 'misconduct' " as used in section 1256 is restricted to " ' "conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result

of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute.'' ' [Citations.]" (*Amador v. Unemployment Ins. Appeals Bd.* (1984) 35 Cal.3d 671, 678 [200 Cal.Rptr. 298, 677 P.2d 224] (*Amador*).)

■ As further explained in *Amador*, fault[2] is the underlying element to consider in interpreting and applying the unemployment compensation provisions. However, the determination of fault does not hinge on finding that the discharge was justified. Rather, the employee's conduct must demonstrate culpability or bad faith. (*Amador, supra*, 35 Cal.3d at p. 678.) In other words, the test for misconduct is volitional, the key factor pivoting on the true nature of the employee's intent. (*Rowe v. Hansen* (1974) 41 Cal.App.3d 512, 520–521 [116 Cal.Rptr. 16].) " 'The conduct may be harmful to the employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton or equally culpable.' [Citations.]" (*Amador, supra*, 35 Cal.3d at pp. 678–679.)

Here, the EDD initially denied benefits on the theory that Robles was discharged from employment because he "broke a reasonable employer rule." In essence this was a determination that breaking a reasonable employer rule amounted to misconduct within the meaning of section 1256. We note in this regard that the notice of determination did not set forth the rule and no rule was established. The Board tied its affirmance denying benefits to the theory that Robles was discharged for misconduct because he breached a "serious obligation," namely the "obligation of good faith and fair dealing."

Robles urges that the trial court erred in concluding that the administrative findings—namely that his actions constituted "misconduct" under section 1256—were supported by the weight of evidence. He urges that the findings are not supported by the evidence and are contrary to law. We agree.

■ The cases are clear that an employee's unequivocal refusal to comply with the employer's rule, without more, is not misconduct within the meaning of section 1256. (*Rowe v. Hansen, supra*, 41 Cal.App.3d at pp. 522–523; see *Davis v. Unemployment Ins. Appeals Bd.* (1974) 43 Cal.App.3d 71, 74 [117 Cal.Rptr. 463] (*Davis*).) Rather, circumstantial evidence bearing on the intent with which the act is committed must be adduced to provide substantial evidence of deliberate, willful, and intentional disobedience. In both cases, circumstantial evidence of prior similar incidents, with warnings to the

---

[2] Specifically, the code declares the state's policy to provide benefits to "persons unemployed through no fault of their own . . . ." (Unemp. Ins. Code, § 100.)

employee, provided sufficient evidence of culpable intent. (*Rowe v. Hansen, supra,* 41 Cal.App.3d at pp. 522–523; see *Davis, supra,* 43 Cal.App.3d at pp. 74–75.)

As the *Amador* court explained, "[a]n employee may violate an employer's reasonable rule 'as a good faith error in judgment rather than as misconduct.' [Citation.]" (*Amador, supra,* 35 Cal.3d at p. 680.)

█ In the case at hand, Robles knew that the employer intended its employees to use the shoe allowance to purchase safety shoes for work, but the element of culpable intent has not been established. First, Robles did not try to hide anything when he went to the shoestore. Next, it is undisputed that he wanted to help his friend who had a recent home accident. Further, Robles had decent safety shoes and did not feel he would jeopardize the safety purpose of the allowance or otherwise injure his employer's interests. When his supervisor indicated the employer did not approve of the intended use, Robles registered his regret and assured the supervisor he would comply. And finally, Robles did not use the shoe allowance for his friend. At most Robles was guilty of a good faith error in judgment. At the least Robles misunderstood the limits of what he could do with the safety shoe allowance, which he was entitled to as a benefit of employment.

█ In any event, section 1256 establishes a rebuttable statutory presumption that, absent evidence from the employer, the employee was not discharged for misconduct: "An individual is presumed to have been discharged for reasons other than misconduct in connection with his or her work . . . unless his or her employer has given written notice to the contrary to the department as provided in Section 1327, setting forth facts sufficient to overcome the presumption." (§ 1256.)

Here, the employer did not oppose benefits, did not speak with the EDD investigators, and did not present any evidence below. More to the point, the employer did not submit facts to the EDD concerning Robles's eligibility, as required by Unemployment Insurance Code section 1327. The employer therefore failed to overcome the presumption that Robles was discharged for reasons other than misconduct within the meaning of section 1256. It follows that Robles was not disqualified for unemployment compensation benefits.

## III. DISPOSITION

We reverse the judgment and direct the trial court to issue its writ of mandate ordering respondents the EDD and the Board to award Robles the unemployment insurance benefits withheld plus interest on those benefits under Civil Code section 3287, subdivision (a). (*Amador, supra,* 35 Cal.3d at

p. 686; *Aguilar v. Unemployment Ins. Appeals Bd.* (1990) 223 Cal.App.3d 239, 245–246 [272 Cal.Rptr. 696]; see *Tripp v. Swoap* (1976) 17 Cal.3d 671, 682–683 [131 Cal.Rptr. 789, 552 P.2d 749], overruled on another point in *Frink v. Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476].)

Ruvolo, P. J., and Sepulveda, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.