Filed 7/3/14

# IN THE SUPREME COURT OF CALIFORNIA

PARATRANSIT, INC., )
)
    Plaintiff and Respondent, )
) S204221
    v. )
) Ct.App. 3 C063863
UNEMPLOYMENT INSURANCE )
APPEALS BOARD, )
) Sacramento County
) Super. Ct.
    Defendant and Respondent; ) No. 34-2009-80000249
)
CRAIG MEDEIROS, )
)
    Real Party in Interest )
    and Appellant. )
_____)

    In this case, an employee refused his employer's repeated orders to sign a written disciplinary notice, because he disputed the notice's factual allegations and thought he was entitled to consult with his union representative first. There is no dispute over whether the employer was within its rights to fire the employee for his insubordination. The only question is whether that single act of disobedience constituted misconduct within the meaning of California's Unemployment Insurance Code. If so, then the employee is disqualified from receiving unemployment compensation benefits.

    Based on the undisputed facts in the administrative record, we conclude the employee's refusal to sign the disciplinary notice was not misconduct but was, at

1

most, a good faith error in judgment that does not disqualify him from unemployment benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

The record before the administrative law judge (ALJ) discloses the following pertinent facts.

Craig Medeiros (Claimant) worked for Paratransit, Inc. (Employer) as a vehicle operator for approximately six years. As a condition of his employment, Claimant was required to join a union. The union and Employer were parties to a collective bargaining agreement (CBA) containing the following provision: "The Employer shall provide a Vehicle Operator with copies of complimentary letters received regarding his or her job performance and with copies of disciplinary notices, including verbal warnings that have been put in writing. All disciplinary notices must be signed by a Vehicle Operator when presented to him or her provided that the notice states that by signing, the Vehicle Operator is only acknowledging receipt of said notice and is not admitting to any fault or to the truth of any statement in the notice."

In February 2008, a passenger filed a complaint with Employer alleging that Claimant had unlawfully harassed her. Employer investigated and concluded the alleged misconduct had occurred. On May 2, 2008, Employer, through its human resources manager and its director of administrative services, held a meeting with Claimant and told Claimant he was being disciplined for the February 2008 incident. Claimant disagreed the incident had occurred as alleged.

During this meeting, Employer gave Claimant a memorandum documenting that Claimant was being assessed discipline for the February 2008 incident, including suspension for two days without pay. Employer explained the substance of this disciplinary notice and asked Claimant to sign the notice above words that read, "Employee Signature as to Receipt." Claimant refused to do so,

2

stating his belief that signing would constitute an admission of guilt. Claimant requested that a union representative be present at the meeting, but was told he was not entitled to one. Employer warned Claimant that his refusal to sign the disciplinary notice was in violation of the CBA and would be viewed as insubordination and grounds for termination of his employment. Claimant did not accept Employer's repeated assurances that his signature would not be an admission of guilt but would only acknowledge receipt of the disciplinary notice. Claimant explained he would not sign because the union president told him not to sign anything without a union representative.

At the hearing before the ALJ, Claimant testified, without refutation by Employer, that he was confused and tired during the meeting with Employer. Claimant explained he was "not functioning right" because he had just finished his work shift, and he got confused because Employer did not immediately show him the disciplinary notice but simply started talking about its contents. Employer also brought up matters that had occurred when Claimant had been hired six years earlier — i.e., saying he "lied when [he] first got hired" — which added to Claimant's confusion and made him think the earlier incident was being discussed at the meeting. Claimant did not believe he would be fired for failing to immediately sign the disciplinary notice, and he thought the meeting would be rescheduled to give him an opportunity to consult with the union. He left the meeting without signing and without asking that the meeting be rescheduled.

Employer subsequently informed Claimant that his employment had been terminated for insubordination due to his failure to sign the disciplinary notice. Claimant had not received any prior warnings for insubordination.

On these facts, the ALJ affirmed the decision of the Employment Development Department (EDD), which had denied Claimant's application for unemployment benefits. The ALJ determined that Claimant was disqualified from

3

receiving such benefits because he was discharged for misconduct connected with work.

Claimant appealed to the Unemployment Insurance Appeals Board (Board). The Board, by a split vote, reversed the ALJ's decision, finding that Claimant did not commit misconduct and that his failure to sign the disciplinary notice "was, at most, a simple mistake or an instance of poor judgment" that did not disqualify him from receiving benefits.

Following the Board's decision, Employer filed a petition for writ of administrative mandamus in the superior court. In reviewing the record before the ALJ, the court found it undisputed that Claimant deliberately disobeyed Employer's order to sign the May 2, 2008 disciplinary notice. Ruling that Claimant had no legal right to union representation at the meeting because its purpose was not investigatory, the court concluded that nothing said or raised in that meeting transformed it into an investigatory interview that would have triggered Claimant's *Weingarten* rights.[1] Moreover, the court did not believe the union president actually told Claimant not to sign anything without first obtaining union representation; rather, it appeared the union president simply told Claimant to follow the advice provided on a written card setting forth his *Weingarten* rights.[2] The court further concluded that, even if the union president told

---

[1] Under *NLRB v. Weingarten, Inc.* (1975) 420 U.S. 251 (*Weingarten*), an employee's right to request union representation as a condition of his participation in a meeting is limited to situations where (1) the purpose of the meeting is investigatory and (2) the employee reasonably believes that the meeting will result in disciplinary action. (*Id*. at p. 257.)

[2] The card read as follows: "STATING YOUR WEINGARTEN RIGHTS TO THE EMPLOYER: 'If this discussion could in any way lead to my being disciplined or terminated or have any effect on my personal working conditions, I respectfully request that my union representative, officer, or steward be present at

*(footnote continued on next page)*

Claimant not to sign anything without union review, the court was "not persuaded that [Claimant] could in good faith have relied on that advice to excuse his refusal to sign the memorandum," given all the circumstances presented.

Finally, the superior court concluded the discrepancy between the language of the disciplinary notice and the terms of the CBA could not have confused Claimant, because the CBA did not require disciplinary notices to use the CBA's exact language and because the language in the disciplinary notice was sufficiently clear. The court then emphasized that, even if the notice's language, by itself, was unclear, Employer had "expressly advised" Claimant that "he was not entitled to a union representative and that signing the memorandum was merely an acknowledgement of receipt and not an admission of the truth of the statements." Finding misconduct in Claimant's act of deliberately disobeying Employer's lawful and reasonable instruction to sign the disciplinary notice, the court issued a peremptory writ of mandate directing the Board to set aside its decision and to issue a new decision finding Claimant disqualified from receiving benefits under the Unemployment Insurance Code.

The Court of Appeal affirmed the superior court judgment in a split decision. We granted Claimant's petition for review.

### DISCUSSION

The fundamental purpose of California's Unemployment Insurance Code[3] is to reduce the hardship of unemployment by "providing benefits for persons

---

*(footnote continued from previous page)*

this meeting. Without union representation, I choose not to participate in the discussion.' "

[3]     All further statutory references are to this code unless otherwise specified.

5

unemployed through no fault of their own." (§ 100; see *Amador v. Unemployment Ins. Appeals Bd.* (1984) 35 Cal.3d 671, 678 (*Amador*).) In light of this purpose, " 'fault is the basic element to be considered' " when "interpreting and applying" the provisions of the code. (*Amador*, at p. 678.) At issue here is section 1256, which renders an individual ineligible for unemployment compensation benefits upon a finding that "he or she has been discharged for *misconduct* connected with his or her most recent work." (Italics added.)[4] When an employee has been found discharged for misconduct, the employer's reserve account may be relieved of benefit charges. (§§ 1030, 1032.)

In *Amador*, we held that section 1256's reference to "misconduct" is "limited to ' "conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are

---

**4**      As relevant here, section 1256 provides: "An individual is disqualified for unemployment compensation benefits if the director finds that he or she left his or her most recent work voluntarily without good cause or that he or she has been discharged for misconduct connected with his or her most recent work. [¶] An individual is presumed to have been discharged for reasons other than misconduct in connection with his or her work and not to have voluntarily left his or her work without good cause unless his or her employer has given written notice to the contrary to the department as provided in Section 1327, setting forth facts sufficient to overcome the presumption. The presumption provided by this section is rebuttable."

not to be deemed 'misconduct' within the meaning of the statute." ' " (*Amador*, *supra*, 35 Cal.3d at p. 678; see *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1994) 23 Cal.App.4th 51, 59.) This means that, even when an employee's conduct is harmful to the employer's interests and justifies the employee's discharge, such conduct will warrant " 'disqualification for unemployment insurance benefits *only if it is wilful, wanton or equally culpable.*' " (*Amador*, *supra*, 35 Cal.3d at pp. 678, 679, italics added.)

It is settled that "an employee's unequivocal refusal to comply with the employer's rule, without more, is not misconduct within the meaning of section 1256." (*Robles v. Employment Development Dept.* (2012) 207 Cal.App.4th 1029, 1035 (*Robles*).) As in all cases of misconduct, the employee's insubordination must be marked by fault. (See *Amador*, *supra*, 35 Cal.3d at p. 678; *Robles*, at p. 1035.) Hence, violating an employer's reasonable order because of a good faith error in judgment does not disqualify an employee from receiving benefits. (See *Amador*, at p. 680; *Moore v. Unemployment Ins. Appeals Bd.* (1985) 169 Cal.App.3d 235, 243 (*Moore*).)

To establish misconduct, there must be "substantial evidence of deliberate, willful, and intentional disobedience" on the part of the employee. (*Robles*, *supra*, 207 Cal.App.4th at p. 1035.) Determinations regarding an employee's intent " 'must take account of " 'real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith.' " ' " (*Amador*, *supra*, 35 Cal.3d at p. 679.) This standard is both subjective and objective, and depends on the totality of the circumstances surrounding the employee and the alleged misconduct. (*Id*. at p. 683, fn. 9.) Thus, while the inquiry " 'tends to place emphasis upon the subjective motives and attitudes of the employee rather than upon objective standards, . . . one cannot

7

determine whether an employee's action is misconduct within the humanitarian purpose of the unemployment compensation statutes without judging the reasonableness of his act *from his standpoint in the light of the circumstances facing him and the knowledge possessed by him at the time.*' " (*Ibid.*; see *Moore*, *supra*, 169 Cal.App.3d at pp. 242-243.)

Amador*, *supra*, 35 Cal.3d 671, is instructive. There, plaintiff Amador was a hospital staff histotechnician responsible for preparing tissue samples for analysis by pathologists and physicians. Two doctors asked her to perform a procedure called grosscutting, which required the selection and removal of small tissue samples from organs or other large (gross) specimens removed from a patient. Although Amador did not object to grosscutting on cadaver organs, she repeatedly refused orders to perform the procedure on tissue removed from live patients. (*Id.* at pp. 675-678.) Based on these facts, the superior court affirmed the Board's denial of benefits, finding that the orders to perform grosscutting were reasonable and that Amador's insubordination in refusing to obey the orders disqualified her from unemployment compensation benefits. (*Id.* at pp. 677-678, 680.)

This court reversed the judgment, concluding Amador had "presented uncontroverted evidence both as to her reasons for refusing to perform grosscutting and as to the factual and logical basis of those reasons." (*Amador*, *supra*, 35 Cal.3d at p. 681.) Viewing the record in the light most favorable to the judgment below, we held the facts did not support the superior court's finding of misconduct. "Amador wilfully refused to perform a work order because her past experience and her consultations with outside authorities led her to conclude that the health of patients would be jeopardized. These facts compel the conclusion that Amador refused to perform grosscutting because — from her standpoint in the light of the circumstances facing her and the knowledge possessed by her at the

8

time — she reasonably and in good faith feared harm to others.  Accordingly, she is entitled to benefits."  (*Id*. at p. 686.)

Regulations promulgated by the director of EDD are in accord.[5]  Section 1256-30, subdivision (b), of the Regulations specifies four elements of misconduct:  "(1) The claimant owes a material duty to the employer under the contract of employment.  [¶] (2) There is a substantial breach of that duty.  [¶] (3) The breach is a willful or wanton disregard of that duty.  [¶] (4) The breach disregards the employer's interests and injures or tends to injure the employer's interests."  Insubordination qualifies as one form of misconduct, and an employee "is insubordinate if he or she intentionally disregards the employer's interest and willfully violates the standard of behavior which the employer may rightfully expect of employees."  (Regs., § 1256-36, subd. (b).)

The Regulations contemplate that an employee may be found insubordinate if he or she "[r]efuses, without justification, to comply with the lawful and reasonable orders of the employer or the employer's representative."[6]  (Regs., § 1256-36, subd. (b)(1).)  The Regulations stipulate, however, that compliance

---

[5]     The director of EDD has promulgated a series of regulations related to eligibility and disqualifications for unemployment compensation benefits.  (Cal. Code Regs., tit. 22, § 1251-1 et seq.)  Hereafter, all references and citations to "Regulations" refer to title 22 of the California Code of Regulations.

[6]     An employee may also be insubordinate by committing "an act which exceeds the authority" granted by the employer in certain circumstances (Regs., § 1256-36, subd. (b)(2)), by making "a statement or remark, which is not the result of an error in judgment," which under the circumstances damages or tends to damage the employer's interest (Regs., § 1256-36, subd. (b)(3)), or by addressing "vulgar, profane, insulting, obscene, derogatory, or offensive language of a vile nature toward the employer" that are "unjustified under the circumstances" (Regs., § 1256-36, subd. (b)(4)).  None of these categories of insubordination is at issue here.

9

with an order is not required if the order is unreasonable in certain enumerated ways (Regs., § 1256-36, subd. (b)(1)(A), (B), (C)), or if the employee acts reasonably in specified circumstances, such as when "[t]he employee has a reasonable and good-faith doubt of the authority of the individual issuing the order" (Regs., § 1256-36, subd. (b)(1)(F); see also *id*., § 1256-36, subd. (b)(1)(D), (E)).  In accordance with the general regulatory principles pertaining to misconduct, an employer's right to discharge an employee for an act of disobedience does not necessarily mean the act amounted to misconduct for purposes of the Unemployment Insurance Code.  (Regs., §§ 1256-30, subd. (e), 1256-36, subd. (a).)

Consistent with *Amador*, *supra*, 35 Cal.3d 671, the Regulations provide that "inadvertence or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not misconduct."  (Regs., § 1256-30, subd. (d).)  This remains true even when the employee's act violates a collective bargaining agreement between the employer and the employee's union.  (Regs., foll. § 1256-41, com. foll. ex. 3.)  As the official comments sensibly explain, "[i]n the normal working situation there is a degree of 'give and take' between the employer and employee. . . .  Differences of opinion, disagreements, and misunderstandings arise, and participation in such discussions is not misconduct.  The circumstances under which the argument or remarks were made are taken into consideration."  (Regs., foll. § 1256-36, com. before ex. 8.)  While insubordination amounting to misconduct generally entails "cumulative acts with prior reprimands or warnings, . . . a single act without prior reprimands or warnings can be insubordinate if the act is substantially detrimental to the employer's interest."  (Regs., foll. § 1256-36, com. before ex. 1; see also Regs., foll. § 1256-30, com. foll. ex. 6 ["if the injury to the employer's interests is trivial and inconsequential, and not substantial, such

10

action standing alone, will not usually amount to misconduct, even though deliberate"].)

Section 1256 creates a rebuttable presumption that, absent evidence from the employer, the employee was not discharged for misconduct. (See *ante*, fn. 4.) In *Amador*, we explained the respective burdens of the parties this way: "The employer bears the overall burden of proving misconduct. [Citations.] However, once it is established that the employee has violated a reasonable order, the burden shifts to the employee to show good cause. [Citation.]" (*Amador*, *supra*, 35 Cal.3d at p. 680, fn. 7.)[7]

In reviewing a decision of the Board on a petition for writ of administrative mandamus, " 'the superior court exercises its independent judgment on the evidentiary record of the administrative proceedings and inquires whether the findings of the administrative agency are supported by the weight of the evidence.' " (*Sanchez v. Unemployment Ins. Appeals Bd.* (1984) 36 Cal.3d 575, 585 (*Sanchez*).) On review of that decision, an appellate court determines whether the independent "findings and judgment of the [superior] court are supported by substantial, credible and competent evidence" in the administrative record. (*Ibid.*; see *Amador*, *supra*, 35 Cal.3d at p. 679.) "[A]ll conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its deductions for those of the superior court." (*Lacy v. California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134.) However, the appellate court

---

[7]     *Amador* found the law applicable to "voluntary terminations for 'good cause' " was sufficiently analogous and relevant to discharges for misconduct. (*Amador*, *supra*, 35 Cal.3d at p. 679.)

may disregard the superior court's conclusions when the probative facts are undisputed and clearly require different conclusions. (*Sanchez*, at p. 585; *Amador*, at p. 679.) " 'Appellate review in such a case is based not upon the substantial evidence rule, but upon the independent judgment rule. [Citations.]' " (*Brotherhood of Teamsters & Auto Truck Drivers v. Unemployment Ins. Appeals Bd.* (1987) 190 Cal.App.3d 1515, 1525.)

Here, the superior court concluded that Claimant committed misconduct within the meaning of section 1256 by deliberately disobeying Employer's lawful and reasonable order to sign the disciplinary notice. Employer agrees with this legal conclusion and reasons as follows. In light of Labor Code section 2856,[8] the reasonableness of an employer's order is not dependent on the terms of a governing CBA, and any order that is reasonable in and of itself triggers the employee's duty of compliance. When an employer issues a lawful and reasonable order, the employee's insubordination in refusing to follow the order is misconduct that renders the employee ineligible for unemployment benefits. In those cases where an employee believes that the employer's order breaches the terms of a CBA, the proper course of action for avoiding a finding of misconduct is for the employee to follow the order and then file a grievance. Claimant disputes this reasoning and contends he was not insubordinate because he had no duty to sign a notice that did not conform to the CBA. Viewing Employer's order to sign a nonconforming notice as unreasonable, Claimant asserts his failure to do

---

[8] Labor Code section 2856 provides: "An employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, except where such obedience is impossible or unlawful, or would impose new and unreasonable burdens upon the employee." (See also Regs., § 1256-36, subd. (b).)

so did not amount to misconduct within the contemplation of the Unemployment Insurance Code.

Because the probative facts are uncontroverted, we exercise our independent judgment in assessing the finding of misconduct. (*Sanchez*, *supra*, 36 Cal.3d at p. 585; *Amador*, *supra*, 35 Cal.3d at p. 679.) In determining whether the finding must be upheld, we need not decide whether the language of the May 2, 2008 disciplinary notice complied with the terms of the CBA, or whether Employer's order to sign the notice was reasonable and lawful notwithstanding any inconsistency with the CBA. If the undisputed facts establish that Claimant acted reasonably and in good faith in refusing Employer's order, then he has not committed misconduct within the meaning of section 1256. (*Amador*, at pp. 680-681; see *Robles*, *supra*, 207 Cal.App.4th at p. 1036.)

We may assume, for purposes of argument, that the superior court correctly determined that Claimant was not wrongfully denied *Weingarten* rights to union representation at the May 2, 2008 meeting. Nonetheless, there is no dispute that Claimant formed his belief to the contrary on the spot, after Employer started discussing discipline and mentioned Claimant's lying, which had occurred six years previously. As the record reflects, this was confusing to Claimant, who testified without contradiction that he was called into the meeting at the end of his work shift when he was tired and "not functioning right." That Claimant's beliefs were not so unreasonable as to constitute misconduct is supported by the appellate decision of the Board, which offered its view that the meeting actually might have triggered Claimant's *Weingarten* rights: "In this case, the claimant was compelled to meet with the employer and his request for union representation was denied despite the fact that the discussion led to a threat of and actual termination."

Likewise, there is no evidence that Claimant refused to sign the disciplinary notice simply to frustrate Employer's objectives or for the sake of being difficult.

13

(See *Amador*, *supra*, 35 Cal.3d at p. 678.)  The signature line on the notice was located above the words, "Employee Signature as to Receipt."  Although we need not decide whether this language complied with the terms of the CBA, we observe the notice contained no explicit admissions disclaimer and did not specify that signature was *solely* for receipt purposes.  Given these omissions, the disciplinary notice was not so clear on the point that Claimant's excuse for not signing it smacked of wrongful intent or evil design.  Moreover, under all the circumstances presented, it would be unreasonable to attribute fault to Claimant for declining to accept Employer's verbal assurances as to the legal effect of his signature on the written document.

Relying on *Rowe v. Hansen* (1974) 41 Cal.App.3d 512, Employer contends an employee's deliberate disobedience of a lawful and reasonable order is an act of insubordination that results in a per se injury to an employer's interest in running a business.  As the Regulations make clear, however, a single act of disobedience without prior reprimands or warnings generally is not misconduct unless the act is substantially detrimental to the employer's interest.  (Regs., foll. § 1256-36, com. before ex. 1; see also Regs., foll. § 1256-30, coms. foll. ex. 2, ex. 5.)  Here, the record contains no indication that Claimant's conduct — i.e., his stated refusal to sign the notice without first consulting his union — interfered with the orderly conduct of Employer's business, or that it injured or even threatened to injure Employer's interest in any consequential or substantial manner.  (See Regs., § 1256-30, subd. (b).)  *Rowe* is not to the contrary.  That decision illustrates the complementary principle that insubordination amounting to misconduct generally entails cumulative acts with prior reprimands or warnings.  (*Rowe*, at pp. 516-523 [upholding trial court's finding of willful, deliberate conduct where employee had 11 separate instances of misconduct and numerous

14

other infractions, some of which were repeated after previous warnings]; see Regs., foll. § 1256-36, com. before ex. 1.)

Employer may be understood to argue that Claimant's past experience with a disciplinary notice in 2004 undermines his claim of a good faith error in judgment. The administrative record discloses the following. Claimant received a disciplinary notice in 2004 after he raised his voice to a supervisor and used inappropriate language in a dispute over a vacation day. Claimant testified that when he met with Employer about the 2004 notice, he was told he would be fired if he did not sign it. Although Claimant did not understand at that time that he was signing as to receipt only, he testified he signed the notice so he would not get fired. Employer suggests this evidence discredits Claimant's excuse that he asserted his union rights and refused to sign the 2008 notice because he was "tired," "confused" and "not functioning right." We disagree.

The only record evidence of substance concerning the earlier incident is a copy of the signed 2004 disciplinary notice and Claimant's brief testimony as described above. It is uncontroverted that Claimant refused to sign the 2008 disciplinary notice because he disputed its factual allegations. The administrative record, however, contains nothing to suggest that Claimant disagreed with the contents of the 2004 notice or that he signed the 2004 notice despite any disagreement. Moreover, in contrast to the 2008 notice, the 2004 notice had a signature line that appeared above the language, "Employee Signature (as to receipt only)." The phrase "(as to receipt only)" was underlined, by hand and apparently in ink. Because there was no evidence that Claimant contested the factual contents of the 2004 notice, and because the language of that notice was discernibly more explicit regarding the legal effect of an employee signature, it is impossible to draw any meaningful inferences from the 2004 incident.

In short, the undisputed facts point to only one *reasonable* conclusion: Claimant acted out of a genuine belief that signing the notice would be an admission of allegations he disputed, and that belief was not so unreasonable under the circumstances as to constitute misconduct within the meaning of section 1256.

Although we have found no California decision addressing misconduct in this context, out-of-state authorities have reached similar conclusions. In *Shannon Engineering & Construction, Inc. v. Mississippi Employment Security Commission* (Miss. 1989) 549 So.2d 446, a worker refused his employer's order to sign a document, as required by the Mississippi Labor Department, which the worker believed erroneously characterized the work he performed. Applying the same definition of misconduct articulated in *Amador*, *supra*, 35 Cal.3d at page 678, the Mississippi Supreme Court held the employer had failed to meet its burden to show that the worker's actions constituted insubordination or any other type of misconduct. (*Shannon*, at pp. 448-450.) Although the worker's refusal to sign the document could (and did) expose the worker to termination of his job, the court agreed with the decision of the Mississippi Employee Security Commission Board of Review that the worker was entitled to an award of unemployment benefits. (*Id*. at pp. 448, 450.)

Similarly, in *Del Pino v. Arrow Air Incorporated* (Fla.Dist.Ct.App. 2006) 920 So.2d 772, an employee was fired after he refused to sign a supervisor's written warning imposing a suspension for certain work conduct. The Florida Unemployment Appeals Commission found the employee's refusal to do so was misconduct that disqualified him from receiving unemployment benefits. The Florida Court of Appeal reversed, observing the employee "would not have been terminated but for the fact that he did not agree to sign the employer's warning." (*Id*. at p. 773.) Relying on a similar definition of misconduct, the court concluded

16

the employee's failure to sign was an isolated incident that "did not rise to the level of misconduct that would result in denial of unemployment benefits." (*Ibid.*)

Finally, Employer contends the superior court's misconduct finding is supported by two precedent benefit decisions of the Board: *Matter of Ludlow* (1960) P-B-190 (*Ludlow*) and *Matter of Gant* (1978) P-B-400 (*Gant*). We are not persuaded.

In *Ludlow*, the claimant was a paint and processing utility man who refused, on five separate occasions, to obey his employer's instruction to dust the fire extinguishers in his work area. (*Ludlow*, *supra*, P-B-190, at pp. 1, 3.) Although six other employees in the claimant's same job classification did in fact dust fire extinguishers upon request or without being asked, the claimant refused to do so because a union representative had informed him the work was outside his job classification. Even though the claimant could readily have performed that task along with his other duties, which included dusting and sweeping, he persisted in his refusal even after he was warned of the serious consequences that would result. (*Id.* at p. 3.) In finding the claimant was discharged for misconduct, the Board emphasized its consistent adherence "to the view that deliberate disobedience of lawful and reasonable instructions is misconduct and that if employees doubt the reasonableness or legality of supervisors' instructions, they should seek redress through other than disobedience." (*Ibid.*)

It is debatable whether a claim of good faith error in judgment was asserted in *Ludlow*, as the decision made no mention of the topic or any authorities thereon. (See Regs., foll. § 1256-41, com. foll. ex. 3 [even when employee's act violates a CBA, an inadvertence or "good-faith error[] in judgment or discretion [is] not misconduct"].) Moreover, as we explained in *Amador*, *supra*, 35 Cal.3d 671, which postdated *Ludlow*, an employee's action must be judged from the employee's standpoint in light of all the circumstances, including the knowledge

17

possessed by him or her at the time.  (*Amador*, at p. 683, fn. 9.)  The law is now clear that deliberate disobedience of a lawful and reasonable instruction, by itself, generally is not misconduct.

The *Gant* decision also involved no contention or evidence that a good faith error in judgment excused the claimant's deliberate and repeated refusals to follow instructions.  Instead, the claimant contended he was "being harassed" and " 'set up' " by the general foreman.  (*Gant*, *supra*, P-B-400, at p. 2.)  *Gant* is inapposite and fails to support the misconduct finding below.

### CONCLUSION AND DISPOSITION

Even assuming Employer's order to sign the disciplinary notice was reasonable and lawful, and even assuming Claimant's refusal to do so may have justified his termination from employment, the dispositive issue here is whether the probative facts, which are undisputed, establish that Claimant committed misconduct within the meaning of section 1256.  We conclude the answer is no.  Taking into account " 'the humanitarian purpose of the unemployment compensation statutes,' " and " 'judging the reasonableness of [Claimant's] act *from his standpoint in the light of the circumstances facing him and the knowledge possessed by him at the time*,' " we find Claimant's refusal to sign at the moment was not misconduct but, at most, a good faith error in judgment that did not disqualify him from unemployment benefits.  (*Amador*, *supra*, 35 Cal.3d at p. 683, fn. 9; see *Robles*, *supra*, 207 Cal.App.4th at p. 1036; see also Regs., § 1256-30, subd. (d); *id*., foll. § 1256-41, com. foll. ex. 3.)  Accordingly, we conclude Claimant is eligible for unemployment compensation benefits.

18

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with the views expressed herein.

**BAXTER, J.**

**WE CONCUR:**

CANTIL-SAKAUYE, C.J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
PREMO, J.*

_____

* Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Paratransit, Inc. v. Unemployment Insurance Appeal Boards

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 206 Cal.App.4th 1319
**Rehearing Granted**

_____

**Opinion No.** S204221
**Date Filed:** July 3, 2014

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Timothy M. Frawley

_____

**Counsel:**

Legal Services of Northern California, Stephen E. Goldberg, Sarah R. Ropelato and Maya Roy for Real Party in Interest and Appellant.

Legal Aid Society-Employment Law Center, Carol Vigne; National Employment Law Project, Antony Mischel; Weinberg Roger & Rosenfeld, David Rosenfeld and Antonio Ruiz for Asian Americans Advancing Justice-Asian Law Caucus, Inc., Asian Americans Advancing Justice-Los Angeles, Bet Tzedek, Katharine and George Alexander Community Law Center, Legal Aid Foundation of Los Angeles, Legal Aid Society-Employment Law Center, National Employment Law Project, Neighborhood Legal Services of Los Angeles County, SEIU-United Service Workers West, Women's Employment Rights Clinic at Golden Gate University School of Law and Worksafe, Inc., as Amici Curiae on behalf of Real Party in Interest and Appellant.

Neyhart, Anderson, Flynn & Grosboll, William J. Flynn, Benjamin K. Lunch and Eileen M. Bissen for California Conference Board of the Amalgamated Transit Union, AFL-CIO as Amicus Curiae on behalf of Real Party in Interest and Appellant.

Altshuler Berzon, Stephen P. Berzon and Stacey M. Leyton for United Steelworkers as Amicus Curiae on behalf of Real Party in Interest and Appellant.

Rediger, McHugh & Owensby, Laura C. McHugh, Alec K. Levine, Candice K. Rediger and Jimmie E. Johnson for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Sarah R. Ropelato
Legal Services of Northern California
515 12th Street
Sacramento, CA  95814
(916) 551-2150

Laura C. McHugh
Rediger, McHugh & Owensby
555 Capitol Mall, Suite 1240
Sacramento, CA  95814
(916) 442-0033