Filed 7/31/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| JOSE ROBLES,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>EMPLOYMENT DEVELOPMENT DEPARTMENT et al.,<br><br>       Defendants and Respondents. | A148803<br><br>(Alameda County<br>Super. Ct. No. RG10553752) |


This is the third chapter in our appellate review of this controversy, which involves the wrongful denial of unemployment benefits by respondents Employment Development Department (EDD) and the California Unemployment Insurance Board (Board).  After both EDD and the Board rejected a claim for unemployment benefits filed by Jose Robles—and the trial court denied Robles's petition for writ of mandate challenging this administrative decision—we issued our first opinion in the matter, concluding that Robles was entitled to unemployment benefits as a matter of law.  (See *Robles v. Employment Development Dept.* (2012) 207 Cal.App.4th 1029 (*Robles I*).) Three years later, EDD continued to refuse to award Robles all of the benefits to which he would have been entitled absent its error, despite multiple court orders that it do so. As a result, we filed a second opinion, upholding the trial court's order demanding immediate payment by EDD to Robles of all withheld benefits, costs, and interest.  (See *Robles v. Employment Development Dept.* (2015) 236 Cal.App.4th 530 (*Robles II*).)

After EDD paid the amounts due, Robles filed a motion in the trial court for attorney fees under California's private attorney general statute, Code of Civil Procedure

section 1021.5 (section 1021.5). He now appeals the trial court's order denying in part his fee request. Because we agree with Robles that the trial court improperly limited the scope of permissible fees in this case to those incurred solely in connection with the *Robles II* litigation, we affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

## BACKGROUND

The lengthy history of this litigation is described in detail in our two previous published decisions in this matter. (*Robles I*, *supra*, 207 Cal.App.4th at pp. 1032–1034 and *Robles II*, *supra*, 236 Cal.App.4th at pp. 534–545.) We summarize only the facts relevant to this most recent appellate challenge.

Robles was terminated from his employment in January 2010 after he tried to use his annual employee shoe allowance to buy a pair of shoes for an injured friend. Robles figured that his friend needed the shoes more than he did, as Robles already had a good pair of safety shoes. His intent was to help a friend without jeopardizing his employer. When the store clerk told Robles that he could not go through with his plan, however, he dropped it. He was fired nonetheless. (*Robles II*, *supra*, 236 Cal.App.4th at p. 534.)

Robles applied to EDD for unemployment benefits, but his claim was denied. Although his employer provided no information regarding the incident, EDD concluded Robles was ineligible for benefits because he broke a reasonable employer rule. Robles filed an administrative appeal, and the administrative law judge (ALJ) upheld the EDD determination, finding " 'that Robles was discharged for misconduct connected with work.' " (*Id.* at p. 536.) Robles next appealed to the Board, which endorsed the ALJ decision, noting that "an employee's misappropriation of employer property is conclusive evidence of misconduct." (*Ibid.*)

Robles initially sought advice from Maria Garfinkle before the ALJ hearing. After the ALJ upheld the EDD determination, Maria and Gary Garfinkle (collectively, Garfinkle) represented Robles pro bono before the Board. Thereafter, they continued to represent Robles on a pro bono basis, filing a petition for a writ of administrative

2

mandate. The trial court denied the petition, concluding that the administrative findings were supported by the weight of the evidence. Robles appealed. (*Ibid.*)

In June 2012, "we issued our opinion in *Robles I*, holding that Robles's conduct in this case—which evinced at most a good faith error in judgment—was insufficient to support a finding of misconduct within the meaning of section 1256 of the Unemployment Insurance Code (section 1256)." (*Robles II*, *supra*, 236 Cal.App.4th at p. 536.) Rather, "employee behavior constitutes misconduct for purposes of section 1256 only if it somehow demonstrates culpability or bad faith—i.e., a willful or wanton disregard of an employer's interests." (*Ibid.*) We additionally noted that, under section 1256, an employee is presumed to have been discharged for reasons other than misconduct, absent written notice from the employer to the contrary. Because Robles's employer had presented no evidence to rebut the statutory presumption, we found that the EDD determination was erroneous on this additional ground. (*Id.* at p. 537.) We therefore "reversed the trial court's judgment and directed it to issue a writ of mandate ordering EDD and the Board 'to award Robles the unemployment insurance benefits withheld plus interest on those benefits under Civil Code section 3287, subdivision (a).' " (*Ibid.*)

Although initially unpublished, we issued an order to publish *Robles I* in July 2012, after receiving requests for publication from Garfinkle, the Legal Aid Society-Employment Law Center, the Civil Justice Law Clinic at Hastings School of Law, and an attorney who had a client in similar circumstances.

In September 2012, the trial court on remand issued a writ of administrative mandamus (Writ), commanding EDD and the Board to set aside their previous decisions and to "award to Robles 'the unemployment insurance benefits that were withheld beginning January 5, 2010 and including extensions under state and federal law, plus interest on those benefits under Civil Code section 3287, subdivision (a).' " (*Robles II, supra*, 236 Cal.App.4th at p. 538.) Several days later, the Board complied, setting aside its previous determination and issuing a new decision in accordance with *Robles I* and the Writ. The Board concluded that Robles was not disqualified from receiving

unemployment insurance benefits and that any benefits that were withheld were payable, with interest. (*Ibid*.)

By contrast, EDD and its counsel consistently rebuffed all efforts by Garfinkle to ensure that his client was promptly paid the wrongfully withheld benefits and interest. We will not here relate the specifics of EDD's "stubborn refusal" to comply with the terms of *Robles I*. (*Robles II*, *supra*, 236 Cal.App.4th at pp. 538–542, 553.) Suffice it to say that after months of bureaucratic runaround, Robles filed a motion in May 2013 to enforce full compliance with the Writ. (*Id.* at pp. 542–543.) In connection with his enforcement motion, Robles submitted declarations attesting to the fact that he had been unemployed since his January 2010 termination date, despite his availability for and diligent attempts to obtain employment. Because he had been unable to obtain from EDD an analysis of the amounts he was owed beyond an initial $12,240 payment EDD sent him after the *Robles I* remand, Robles submitted with the motion documentation calculating a balance due of over $45,000. (*Id.* at pp. 540, 542–543.)

EDD defended its compliance with the Writ, arguing before the trial court that Robles was not eligible for benefits for weeks where he did not complete " 'the necessary paperwork to certify that he was available for work but remained unemployed despite diligently searching for work.' " (*Robles II*, *supra*, 236 Cal.App.4th at p. 544.) The trial court was not persuaded and ordered EDD to pay Robles an additional $45,560.39 in benefits, interest, and costs. It also ordered EDD to pay a $1,000 fine pursuant to section 1097 of the Code of Civil Procedure for disobeying the Writ (Enforcement Order). EDD appealed. (*Id.* at p. 545.)

We upheld the trial court's Enforcement Order in our published decision in *Robles II*, 236 Cal.App.4th 530. Noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance program" (*id.* at p. 546), that "Robles had shown himself substantively eligible for the identified benefits by attesting to his availability, and diligent search, for work" (*id*. at p. 552), and that "EDD's chosen process in response to the Writ had utterly failed to result in the timely payment of all of the benefits to which Robles was entitled" (*ibid.*), we held that the trial court properly

4

ordered the immediate payment of benefits without requiring Robles to jump any additional procedural hurdles (*ibid*.). As a result, EDD paid the remaining amounts owed, resulting in Robles' total recovery of $66,214.53.

In November 2015, Garfinkle filed a motion in the trial court, seeking reasonable attorney fees pursuant to California's private attorney general statute, section 1021.5. The motion sought slightly over $1,000,000 in fees for legal services from Garfinkle's first involvement in the case in 2010 to the present. The trial court issued an order in March 2016 awarding $365,660.94 in fees, limiting recovery to legal services furnished in connection with the *Robles II* phase of the litigation. Shortly thereafter, Garfinkle filed a motion seeking a limited new trial and/or modification of the fee award, citing to certain perceived errors and omissions in the award with respect to hours compensated, hourly rate, and the multiplier applied. The trial court denied this motion.

Robles appealed, bringing the matter before this court for the third time.

## DISCUSSION

### I. Statutory Framework and Standards of Review

Recently, in *City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688 (*Oakland PFRS*), we summarized the underlying purpose of section 1021.5 as follows: " 'Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees. [Citation.] The purpose of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 390 (*Robinson*).) In particular, '[t]he doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 (*Woodland Hills*).) In

5

short, section 1021.5 is focused 'on solving the problem of the nonaffordability of litigation that will benefit the public *but cannot pay its own way*.' (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1224, italics added (*Whitley*).)" (*Oakland PFRS*, at p. 697.)

" '[E]ligibility for section 1021.5 attorney fees is established when "(1) [the plaintiff's] action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons,' and (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate.' " [Citation.]' " (*Heron Bay Homeowners Assn. v. City of San Leandro* (2018) 19 Cal.App.5th 376, 386, quoting *Whitley, supra*, 50 Cal.4th at p. 1214.) "Since section 1021.5 states the criteria supporting a grant of fees in the conjunctive, 'each element must be satisfied to justify a fee award.' " (*Oakland PFRS*, *supra*, 29 Cal.App.5th at pp. 697–698.) Once the statutory criteria for a fee award are met, however, "attorney fees must be awarded . . . unless special circumstances render such an award unjust." (*Robinson*, *supra*, 202 Cal.App.4th at p. 391.)

"Generally speaking, a trial court's decision whether to award attorney fees under section 1021.5 is reviewed for abuse of discretion. (*Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71, 78 [*Samantha C.*].) However, ' " 'de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " ' (*Whitley, supra*, 50 Cal.4th at p. 1213.) Thus, '[o]n appeal, "we must pay ' "particular attention to the trial court's stated reasons in denying or awarding fees and [see] whether it applied the proper standards of law in reaching its decision." ' " [Citation.] "The pertinent question is whether the grounds given by the court . . . are consistent with the substantive law of . . . section 1021.5 and, if so, whether their application to the facts of this case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute." ' " (*Oakland PFRS*, *supra*, 29 Cal.App.5th at

6

p. 698.)  In other words, a trial court's discretion must be exercised "within statutory parameters."  (*Healdsburg Citizens for Sustainable Solutions v. City of Healdsburg* (2012) 206 Cal.App.4th 988, 997.)  Moreover, section 1021.5 should be construed such that its underlying legislative purpose is not "frustrated by a restriction of the availability of attorney fee awards where the restriction is not clearly mandated by the language of the statute."  (*In re Head* (1986) 42 Cal.3d 223, 233.)

By contrast, and as plaintiff acknowledges, the *amount* of fees awarded under section 1021.5 "is classically tested under the abuse of discretion standard."  (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830; see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*) ["The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" ' "].)

## II.    Entitlement to Fees Under Section 1021.5

In the present case, the trial court concluded that counsel was entitled to attorney fees under section 1021.5 for legal services rendered to enforce the order made in *Robles I*, which ultimately led to our opinion in *Robles II*.  It therefore awarded fees from September 25, 2012—the date the trial court entered the peremptory writ of mandate after the remittitur issued in *Robles I*—to the present.

In granting the fee motion for the post-*Robles I* period, the trial court concluded that section 1021.5 fees were appropriate for the work that culminated in the publication of *Robles II* because the litigation enforced important rights affecting the public interest, specifically the right to timely receipt of wrongfully withheld benefits and the right to have governmental agencies obey final court orders.  The trial court further found that the *Robles II* litigation conferred a significant benefit on a large class of persons:  those recipients of government assistance who have successfully appealed an initial denial of benefits.  Finally, the trial court recognized that placing the financial costs of this necessary private enforcement action solely on Robles would be unduly burdensome.

We have no quarrel with the trial court's conclusion that counsel was entitled to an award of fees under section 1021.5 for the post-*Robles I* work done in this case. Indeed, EDD does not challenge this decision. The trial court, however, distinguished counsel's *Robles II* work from its *Robles I* work and determined that section 1021.5 fees should not be awarded for legal services rendered in connection with the trial court and appellate proceedings that led to *Robles I*. Specifically, the trial court opined that section 1021.5 fees were inappropriate for work prior to *Robles II* because Robles "initiated this writ proceeding in pursuit of [his] own pecuniary interest, namely to obtain unemployment benefits for himself, and not in an attempt to act as a true private attorney general." The trial court further reasoned that the misconduct discussed in *Robles I* was specific to Robles and that existing case law had already defined misconduct for purposes of determining unemployment benefits. According to the trial court, it was only after EDD "raised the stakes in this litigation" by persistently refusing to comply with court orders that this case took on its public interest character. Plaintiff argues that this was error, and we agree.

In reaching its conclusion that a *Robles I* fee award was unwarranted, the trial court relied on *LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932 (*LaGrone*). LaGrone filed a petition for a writ of administrative mandamus after he was laid off from his engineering job with the Port of Oakland, a department of the City of Oakland (City), even though he had more seniority than certain retained engineers in other City departments. (*Id.* at pp. 935–936.) The trial court directed that LaGrone be reinstated with backpay and benefits but denied his request for section 1021.5 fees. (*Id.* at pp. 935, 940.) On appeal, the court determined that the denial of fees was within the trial court's discretion. (*Id.* at pp. 935, 945–956.) The appellate court noted that section 1021.5 " 'was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest.' " (*Id.* at p. 946.) Instead, the purpose of the statute is " 'to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the

outcome would not by itself constitute an adequate incentive to litigate.' " (*Ibid.*)  As LaGrone's petition was not "initiated in the interest of the general public," but was instead an action seeking to reinstate his employment, the appellate court saw no abuse of discretion in the trial court's determination that any incidental public benefit was not significant enough to justify a fee award under section 1021.5.  (*Ibid.*)  The trial court here, analogizing to *LaGrone*, concluded that Robles was not acting as "a true private attorney general" when he filed his writ petition because he was pursuing his own "pecuniary interest, namely to obtain unemployment benefits for himself."

We do not find *LaGrone* persuasive in the circumstances presented here.  As an initial matter, the case is distinguishable because LaGrone's personal stake in that proceeding, while not quantified in the opinion, included backpay, benefits, and reinstatement to his 27-year civil service career as an engineer and was thus almost certainly of a different order of magnitude than Robles's financial interest in the instant matter.[1]  (See *LaGrone*, *supra*, 202 Cal.App.4th at pp. 935–936.)  More importantly, however, *LaGrone* did not address *Whitley*, the Supreme Court's seminal case on section 1021.5, which established the appropriate analytical framework for determining whether a personal interest is disqualifying for purposes of the private attorney general statute. (See *Whitley*, *supra*, 50 Cal.4th at pp. 1214–1221.)

*Whitley* addressed whether a litigant's personal, nonpecuniary interest in litigation could disqualify that litigant from a fee award under section 1021.5.  (*Whitley*, *supra*, 50 Cal.4th at p. 1211.)  In concluding that it does not, our high court considered the "language, legislative history, [and] evident purpose of section 1021.5," and opined generally that "the purpose of section 1021.5 is not to compensate with attorney fees only those litigants who have altruistic or lofty motives, but rather all litigants and attorneys who step forward to engage in public interest litigation when there are insufficient financial incentives to justify the litigation in economic terms."  (*Ibid.*)

---

[1] Robles was seeking $11,700 in withheld unemployment benefits when he filed his petition for writ of mandate in December 2010.

Moreover, *Whitley* cited with approval the method for weighing litigation costs and benefits that was used in *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1. (*Whitley*, *supra*, 50 Cal.4th at p. 1215.) Under this multi-step method for determining eligibility for a section 1021.5 fee award, a court first estimates the expected monetary value of the case at the time the party seeking fees made vital litigation decisions; discounts that value by " 'some estimate of the probability of success at the time the vital litigation decisions were made which eventually produced the successful outcome' "; determines the costs of bringing the litigation to fruition; and then places " 'the estimated value of the case beside the actual cost and make[s] the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved' " in the case before it. (*Id.* at pp. 1215–1216, 1220; see also *Oakland PFRS*, *supra,* 29 Cal.App.5th at pp. 699–700.) Assuming the other section 1021.5 criteria are met, a fee award " 'will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Whitley*, *supra*, 50 Cal.4th at p. 1215.) Thus, under *Whitley*, a personal pecuniary interest does not disqualify a litigant from a fee award under section 1021.5 unless the expected value of the litigant's own monetary award exceeds costs by a "substantial margin." (*Ibid.*)

Here, there can be no serious argument that Robles's own hoped-for monetary recovery (even without a discount based on probability of success) came anywhere close to the costs involved in prosecuting the petition for writ of mandate. Indeed, his ultimate recovery of approximately $66,000 (including interest and costs) is dwarfed by the approximately $200,000 in fees incurred just for the legal services through *Robles I*. Moreover, as we recently confirmed in *Oakland PFRS*, when making the final "value judgment" as to whether offering the bounty of court-awarded fees is desirable in a particular case, a litigant's poverty is a relevant consideration. (*Oakland PFRS*, *supra,* 29 Cal.App.5th at pp. 703–708 ["consideration of a successful litigant's limited financial means makes sense given the underlying purpose of section 1021.5, which, as deduced

10

by *Whitley*, is to solve 'the problem of the nonaffordability of litigation that will benefit the public *but cannot pay its own way*' "].)

The record of Robles's poverty throughout these proceedings is both compelling and uncontroverted. Garfinkle took the matter on a purely pro bono basis from the start due to Robles's "dire financial condition." Robles lost his housing after losing his job and was forced to live with his brother for a period of time, before he ran out of money and returned to the Philippines to live with his 95-year-old father. (*Robles II, supra*, 236 Cal.App.4th at pp. 537–538, 540.) As of the time of the enforcement proceedings in the trial court, Robles, then over 64 years old, remained unable to find employment. (*Id.* at p. 543 & fn. 5.) In these circumstances, Robles' modest pecuniary interest in this case was not a valid reason for denying a fee award under section 1021.5 for the *Robles I* portion of the litigation, any more than it was with respect to *Robles II*. (See *Gunn v. Employment Development Dept.* (1979) 94 Cal.App.3d 658, 666 [noting that the successful plaintiff's pro per status supported an award of fees under § 1021.5 because it would be "an undue financial burden" to place the costs of litigation on her and the fees "should not in the interest of justice be paid out of her comparatively slight recovery of benefits"].)

We similarly reject the trial court's conclusion that a section 1021.5 fee award was inappropriate with respect to the *Robles I* portion of this litigation because it did not enforce an important public right or confer a significant benefit on a large class of persons. "When determining whether a litigant has vindicated an important right affecting the public interest, '[t]he "judiciary [must] exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." [Citation.] "The strength or societal importance of a particular right generally is determined by realistically assessing the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." ' " (*Oakland PFRS*, *supra*, 29 Cal.App.5th at p. 710.) As for the significant benefit to a large group that will justify a fee award under section 1021.5, we have repeatedly confirmed that such a benefit " 'need not represent a "tangible" asset or a "concrete" gain but, in some cases, may be

11

recognized simply from the effectuation of a fundamental constitutional or statutory policy.' " (*People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 465 (*Investco Management*); see also *Oakland PFRS*, *supra,* 29 Cal.App.5th at p. 710.)  Finally, we note that "where, as here, the litigation at issue has resulted in an appellate decision, 'an appellate court is in at least as good a position as the trial court to judge whether the legal right enforced through its own opinion vindicates an important public interest and confers a significant benefit on the general public or a broad class of citizens.' " (*Oakland PFRS*, *supra,* 29 Cal.App.5th at p. 709.)

As we stated in *Robles II*:  " 'The fundamental purpose of California's Unemployment Insurance Code is to reduce the hardship of unemployment . . . .' (*Paratransit, Inc. v. Unemployment Ins. Appeals Bd.* (2014) 59 Cal.4th 551, 558, fn. omitted; see § 100 [unemployment insurance system created to provide benefits 'for persons unemployed through no fault of their own' and to reduce 'the suffering caused thereby'].)  Specifically, ' "[u]nemployment benefits provide cash to a newly unemployed worker 'at a time when otherwise he would have nothing to spend,' serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity." ' " (*Robles II, supra*, 236 Cal.App.4th at pp. 545–546.)  As a consequence, we have stressed the societal importance of an unemployment insurance system that promptly pays recipients all benefits due.  (See *id.* at p. 546 [noting that "the prompt payment of benefits is the ' "very essence" ' of the unemployment compensation insurance program"].)  We have also emphasized the need to "liberally construe the Unemployment Insurance Code to advance the legislative objective of reducing the hardship of unemployment." (*Ibid.*; *Robles I*, *supra*, 207 Cal.App.4th at p. 1034.)

The trial court recognized the significance of *Robles II* in relationship to the achievement of these fundamental legislative goals, concluding that the published opinion enforced the important public right of obedience to court orders following a final appeal and conferred a significant benefit on those recipients of government benefits who have received favorable appellate determinations after an initial denial of benefits. However, while identifying *Robles II*'s focus on the important public right to prompt

payment of improperly withheld unemployment benefits, the trial court ignored the societal importance of *Robles I*'s contribution to the full payment of those benefits to all entitled recipients. *Robles I* made clear that disqualifying "misconduct" under section 1256 of the Unemployment Insurance Code must involve "culpability or bad faith" rather than a mere "good faith error[] in judgment." (*Robles I*, *supra*, 207 Cal.App.4th at pp. 1034–1035.)

The trial court found this reasoning insufficient to support a fee award under section 1021.5 for *Robles I*, noting that the decision was fact-specific and that case law already existed defining misconduct in the unemployment insurance context. We disagree. It is true that our high court defined misconduct under section 1256 of the Unemployment Insurance Code in *Amador v. Unemployment Ins. Appeals Bd.* (1984) 35 Cal.3d 671, 678–685 and that *Robles I* repeatedly relied on *Amador* in construing the statute. (*Robles I*, *supra*, 207 Cal.App.4th at pp. 1034–1037.) However, the making of new law is not a prerequisite to a fee award under section 1021.5. Rather, a "central function" of the private-attorney-general statute is " 'to call public officials to account and to insist that they enforce the law.' " (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 632.) Here, *Amador* had been decided almost 30 years before Robles's termination, and yet it was being completely disregarded, leading to the wrongful denial of unemployment benefits in this and other cases. By demanding that *Amador* be followed, despite its somewhat different factual context, and by emphasizing the statutory presumption *against* a finding of misconduct, *Robles I* vindicated an important right affecting the public interest. It also provided a significant benefit, both to the public generally and specifically to those who might otherwise improperly be denied the unemployment benefits to which they were due. (See *Investco Management*, *supra*, 22 Cal.App.5th at p. 465 [recognizing benefit to the general public from effectuating a fundamental statutory policy]; see also *American Federation of Labor v. Employment Development Dept.* (1979) 88 Cal.App.3d 811, 822 [concluding that "the upholding of unemployed workers' right to prompt payments under the Social Security Act is a significant benefit to both unemployed workers and the public at large"].)

13

In sum, as the *Robles I* litigation satisfies all the criteria for a fee award under section 1021.5, the trial court's conclusion to the contrary was error. On remand, the trial court should determine a supplemental fee award to compensate for the reasonable hours spent on legal services in connection with the *Robles I* portion of these proceedings.[2]

## III.  Considerations on Remand

To account for the lengthy delay in obtaining a fee award for the work associated with *Robles I*, the court on remand should use current prevailing hourly rates (or, alternatively, should use lower hourly rates but award interest thereon from the date those services were rendered). (Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 583–584.) For the same reason, we do not preclude the court from reconsidering the rates it used with respect to the fee award for *Robles II*.

Other than that guidance, we decline plaintiff's request that we direct the trial court to exercise its discretion on remand in any specific way.

## DISPOSITION

The trial court's fee order is reversed to the extent it declined to award attorney fees under section 1021.5 for work related to *Robles I*, and this matter is remanded for the trial court to make an additional award of attorney fees and costs that is consistent with the views set forth in this opinion. Robles is entitled to his costs on appeal.

---

[2]  Because we conclude that the legal services provided with respect to *Robles I* qualify, in their own right, for a fee award under section 1021.5, we need not consider Robles's alternate argument that such services should be compensated as "useful and necessary" to the "single legal course" that culminated in *Robles II*. (See *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1461.)

_____

BROWN, J.

WE CONCUR:


_____

POLLAK, P. J.


_____

STREETER, J.

Trial Court: Alameda Superior Court

Trial Judge: Hon. Evelio M. Grillo

Counsel for Petitioner and
Respondent:

Gary S. Garfinkle
Maria J. Garfinkle
Richard Morse Pearl

Counsel for Appellant and
Respondent:

Xavier Becerra
Attorney General of California
Susan M. Carson
Supervising Deputy Attorney General
Carolyn O. Tsai
Deputy Attorney General