Filed 4/3/23; certified for publication 4/25/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CARI McCORMICK,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>     Defendant and Respondent. | A164672<br><br>(Lake County<br>Super. Ct. No. CV416903) |

Cari McCormick sought disability retirement based on symptoms caused by her office environment, and the California Public Employees' Retirement System (CalPERS) denied her application. After the trial court denied her petition for a writ of administrative mandate, we issued a published opinion reversing the judgment. (*McCormick v. Public Employees' Retirement System* (2019) 41 Cal.App.5th 428, 430–431 (*McCormick I*).) We held that CalPERS members are eligible for disability requirement under the Public Employees' Retirement Law (PERL) (Gov. Code, § 20000 et seq.) when they can no longer perform their usual duties at the location where they are required to work.[1] (*McCormick I*, at pp. 430–431.) We also clarified that a

---

[1] All further statutory references are to the Government Code unless otherwise noted.

CalPERS member need not request an accommodation to become eligible for disability retirement. (*Id.* at p. 441.)

On remand, McCormick filed a motion under Code of Civil Procedure section 1021.5 (section 1021.5), which authorizes the award of attorney fees to a prevailing party when the action has conferred "a significant benefit . . . on the general public or a large class of persons." She now appeals from the denial of that motion, contending that the trial court erred by concluding she did not satisfy the significant-benefit requirement. Applying a de novo standard of review, we agree with McCormick that our prior opinion conferred a significant benefit on the public and that she is otherwise entitled to attorney fees under section 1021.5.[2] Thus, we reverse and remand for the court to determine the appropriate amount of fees to award.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

A detailed summary of the underlying facts is set forth in *McCormick I.* Beginning in 2002, McCormick worked as an appraiser for Lake County, a position that required her to perform most of her work in the Lakeport courthouse. (*McCormick I, supra,* 41 Cal.App.5th at p. 431.) She began experiencing pain and fatigue in 2010, and by 2012, she was unable to finish a full day of work at the courthouse. (*Ibid.*) She felt much better when she was at home or outside, but her supervisors did not allow her to telecommute or work elsewhere. (*Ibid.*) The following year, after she exhausted her medical leave, Lake County terminated her employment. (*Ibid.*)

---

[2] As a result of this conclusion, we need not address McCormick's claim that the trial court erred by admitting the declaration of a CalPERS employee about the dearth of disability-retirement applications presenting a similar fact pattern to hers.

McCormick then submitted an application for disability retirement to CalPERS, which was denied. (*McCormick I, supra*, 41 Cal.App.5th at p. 432.) She appealed the decision, and an administrative hearing on the appeal was held in mid-2016. (*Ibid.*) At the hearing, she presented a doctor's opinion that she had " '[a]llergic rhinitis' and an 'allergic-like reaction of unknown etiology' " that were triggered by the courthouse. (*Ibid.*) CalPERS presented another doctor's opinion that "while there was no doubt McCormick was experiencing real symptoms that were associated with her workplace, 'if the environment [could] be amended or . . . accommodations [could be provided] to help her, then she would not be disabled.' " (*Ibid.*) A few months later, CalPERS denied McCormick's administrative appeal. (*Id.* at p. 433.)

After unsuccessfully seeking reconsideration of CalPERS's decision, McCormick filed a petition for a writ of administrative mandate in the trial court. (*McCormick I, supra*, 41 Cal.App.5th at p. 433.) The court denied the petition in February 2018. (*Ibid.*) It concluded that because McCormick would be physically capable of performing her job duties if the courthouse " 'was purged of the offending triggers' " or if she was " 'transferred to a different location so as to avoid those offending triggers,' " she was not permanently disabled so as to qualify for disability retirement. (*Ibid.*)

McCormick appealed the denial of her writ petition to this court. In October 2019, we issued an opinion reversing the order denying the petition and remanding for further proceedings. (*McCormick I, supra*, 41 Cal.App.5th at p. 442.) We held that "employees are eligible for CalPERS disability retirement under . . . section 21156 when, due to a disability, they can no longer perform their usual duties at the only location where their employer will allow them to work, even if they might be able to perform those duties at a theoretical different location." (*Id.* at pp. 430–431, fn. omitted.) In doing

3

so, we also emphasized that requesting an accommodation is not a prerequisite to eligibility. (*Id.* at pp. 440–441.) McCormick was entitled to relief because "her usual duties required [her] to work in the Lakeport courthouse, and whether she could have performed her duties elsewhere [was] irrelevant to her eligibility for disability retirement." (*Id.* at p. 441.)

After this court issued *McCormick I*, CalPERS approved McCormick's application for disability retirement, and McCormick began receiving benefits. In November 2020, the trial court entered a stipulated judgment in her favor. The following January, she filed a motion for attorney fees under section 1021.5. Contending that her lawsuit conferred a significant benefit on the general public or a large class of persons, namely "the nearly [two] million CalPERS members" who might "potentially become eligible for disability retirement benefits," she sought approximately $812,000 in attorney fees, representing a lodestar of $270,820 with a 3.0 multiplier.

CalPERS opposed the motion, arguing that "[t]he esoteric and fact-specific nature" of the issue *McCormick I* addressed made it "doubtful that anyone else will benefit from this litigation." CalPERS claimed that in the past decade it had not received an application for disability retirement "alleging similar facts," which it characterized as being " 'allergic' to [one's] work location" and not receiving "a reasonable accommodation to work elsewhere." In support, CalPERS submitted a declaration from a manager in its benefits division stating that in her 31 years with the agency, she was "not aware of any application in which a CalPERS member . . . [sought disability retirement] based on an alleged allergic condition caused by their place of work in which the employer allegedly failed to provide a reasonable accommodation."

4

In May 2021, after a hearing, the trial court orally denied McCormick's motion. At her request, a statement of decision was issued, which transcribed the court's oral ruling. Relying on *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917 (*Woodland Hills*), the court determined that our holding in *McCormick I* did not confer a significant benefit under section 1021.5, even though it enforced an important right through a published opinion. Reasoning that the group affected by *McCormick I* comprised only people applying for disability retirement who "were able to work except for a temporary disability that was susceptible to accommodation which did not occur," the court found there was no evidence to suggest that group was sufficiently large to warrant attorney fees under section 1021.5.

II.

DISCUSSION

A.     *General Legal Standards*

Section 1021.5, "a codification of the 'private attorney general' doctrine, recognizes that 'privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' " (*Roybal v. Governing Bd. of Salinas City Elementary School Dist.* (2008) 159 Cal.App.4th 1143, 1147, quoting *Woodland Hills*, *supra*, 23 Cal.3d at p. 933.) Thus, " ' "the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." ' " (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250.)

5

Section 1021.5 authorizes a court to "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." The party seeking fees has the burden " 'to establish each prerequisite to an award' " under the statute. (*Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71, 78.)

Here, CalPERS does not contest that McCormick was a successful party and that her lawsuit resulted in the enforcement of an important right affecting the public interest. (See *City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 710–711 (*City of Oakland*) [recognizing "societal importance of public employee pension rights"].) But it claims that the trial court properly concluded that McCormick failed to satisfy the separate requirement that her lawsuit conferred a significant benefit on the general public or a large class of persons. (See *Woodland Hills*, *supra*, 23 Cal.3d at p. 935.) Whereas the important-right requirement "merely calls for an examination of the subject matter of the action—i.e., whether the right involved was of sufficient societal importance," the significant-benefit requirement "calls for an examination whether the litigation has had a beneficial impact on the public as a whole or on a group of private parties which is sufficiently large to justify a fee award." (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1417, disapproved on another ground in *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1152–1153 & fn. 7.)

6

Generally, we review an award of attorney fees under section 1021.5 for an abuse of discretion. (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025.) But the standard of review "depends on the extent to which there were issues of fact below. If the issue is whether the criteria for an award of attorney fees and costs in this context have been satisfied, 'this may be a mixed question of law and fact and, if factual questions predominate, may warrant a deferential standard of review.' [Citation.] If, on the other hand, the underlying facts are largely undisputed and the issue calls for statutory construction, it is a question of law that is reviewed de novo." (*Roybal v. Governing Bd. of Salinas City Elementary School Dist.*, *supra*, 159 Cal.App.4th at p. 1148; see *Serrano*, at pp. 1025–1026.)

McCormick urges us to apply de novo review because when "a published appellate opinion . . . provides the basis upon which attorney fees are sought, . . . the Court of Appeal[] is at least as well positioned as the trial court to determine whether [s]ection 1021.5 fees should be awarded." We agree that we can independently determine the legal significance of our prior opinion and whether it " ' "confers a significant benefit to the general public or a broad class of citizens." ' " (*Robles v. Employment Development Dept.* (2019) 38 Cal.App.5th 191, 203 (*Robles*).) More generally, "[h]ow many people will receive what kind of benefit, and how much, as a result of a given legal action is usually more of a value judgment than an issue of fact. And most often it is a value judgment about legal effects and the like which appellate courts are well situated to make." (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 9.) Thus, we will independently review the trial court's assessment of the significant-benefit element, " ' "pay[ing] ' "particular attention to [its] stated reasons in denying . . . fees and [seeing] whether it applied the proper standards of law in

7

reaching its decision." ' " ' " (*City of Oakland*, *supra*, 29 Cal.App.5th at p. 698; see *Los Angeles Police*, at p. 9.)

> B.     *McCormick's Case Satisfies the Significant-benefit Requirement.*

When determining whether a lawsuit conferred a significant benefit on the general public or a large class of persons, a trial court should perform "a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills*, *supra*, 23 Cal.3d at pp. 939–940.) "The extent of [the significant benefit] ' " 'need not be great,' " ' '[n]or is it required that the class of persons benefited be " 'readily ascertainable.' " ' " (*Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 764; *Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 543 (*Indio Police*).) "Furthermore, 'evidence of the size of the population benefited by a private suit is not always required. The substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefited.' " (*Indio Police*, at pp. 543–544.)

McCormick offers several arguments for why this litigation conferred a significant benefit on the public or a large group of persons. Her arguments fall into two categories: those that broadly claim the significant-benefit requirement is met because the rights at issue are important, and those that focus on *McCormick I*'s particular holdings and likely impact. We agree with the trial court that satisfaction of the significant-benefit requirement is not "automatic" just because this case involves important rights and resulted in a published opinion. But in assessing whether *McCormick I* conveyed a significant benefit, the court took too narrow a view of the opinion's impact and thus the group on which it conferred a benefit. Applying our independent judgment, we conclude that the significant-benefit requirement is satisfied here.

8

1. The significant-benefit requirement is not met merely because McCormick vindicated important statutory rights.

McCormick begins by claiming that "litigation that enforces fundamental rights necessarily confers a significant benefit on society as a whole." True, "the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant*' benefit) and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation." (*Woodland Hills*, *supra*, 23 Cal.3d at p. 939; *Baxter v. Salutary Sportsclubs, Inc.* (2004) 122 Cal.App.4th 941, 945.) Rather, section 1021.5's " 'purpose is to provide some incentive for the plaintiff who acts as a true private attorney general . . . despite the fact that [the plaintiff's] own financial stake in the outcome would not by itself constitute an adequate incentive to litigate.' " (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 635.) Thus, "a plaintiff who enforces a statutory right is not necessarily entitled to section 1021.5 fees when the primary effect of the suit is to vindicate an individual economic interest," though fees may not be denied on that basis alone. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578, fn. 9; *Indio Police, supra*, 230 Cal.App.4th at p. 543.)

*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, on which McCormick relies, illustrates this principle. In *Press*, the Supreme Court determined that a section 1021.5 award in a case involving the public collection of signatures for a ballot initiative was proper because "the general public benefitted from the enforcement of fundamental constitutional rights—those embodied in the free speech and petition provisions of the California Constitution." (*Press*, at pp. 316, 319.) But the Court also emphasized that

9

"not all lawsuits enforcing constitutional guarantees," much less statutory rights, "will warrant an award of fees." (*Id.* at p. 319, fn. 7.) Rather, fees may be unwarranted if the right at issue is essentially economic, such as the right to be free from unconstitutional takings of private property, and "the primary effect of the judgment" is to advance the "plaintiffs' personal economic interests." (*Ibid.*) Thus, *Press* hardly supports the conclusion that McCormick's vindication of her statutory right to disability retirement benefits, in which she has a clear pecuniary interest, necessarily conveyed a significant benefit on the public.

To be sure, the PERL has an important purpose, "to effect economy and efficiency in the public service" by providing a mechanism for replacing "employees who become superannuated or otherwise incapacitated." (§ 20001.) But we cannot agree with McCormick's contention that her suit conveyed a significant public benefit just because it enforced the PERL. Although the importance of the right or principle at issue is undoubtedly relevant, the analysis generally requires a case-specific analysis of the benefit bestowed. (See *Woodland Hills*, *supra*, 23 Cal.3d at p. 939; *Baxter v. Salutary Sportsclubs, Inc.*, *supra*, 122 Cal.App.4th at p. 945; see also *Beasley v. Wells Fargo Bank*, *supra*, 235 Cal.App.3d at p. 1417.)

Nor can we agree with McCormick's similarly broad assertion that "[a] case requiring that existing law be followed confers a significant benefit on the public." "The fact that litigation enforces existing rights does not mean that a substantial benefit to the public cannot result," since "the declaration of rights in 'landmark' cases would have little meaning if those rights could not be 'enforced' in subsequent litigation." (*Press v. Lucky Stores, Inc.*, *supra*, 34 Cal.3d at p. 318.) Still, while "the making of new law is not a *prerequisite* to a fee award under section 1021.5" (*Robles*, *supra*, 38 Cal.App.5th at p. 204,

italics added), a significant benefit is not conferred on the public every time a case enforces existing law.

          2.     *McCormick I* conferred a significant benefit on the public.

McCormick also contends that her lawsuit conferred a significant benefit on the public or a large group of persons because it resulted in *McCormick I*, which "announced two significant clarifications of the PERL." On this point, we agree. Although the trial court correctly recognized that the significant-benefit requirement was not satisfied just because McCormick's prior appeal resulted in a published opinion, it took too cramped a view of the benefit *McCormick I* conferred.

Initially, we cannot accept McCormick's sweeping contention that "[a] published appellate decision enforcing important societal rights in and of itself confers a significant benefit on a large class of persons under [s]ection 1021.5." "[W]hether litigation generates important appellate precedent is a *factor* courts may consider" in deciding whether to award fees under the statute, but it is not determinative, even for whether the less onerous "important right affecting the public interest" requirement is met. (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 958, italics added; *City of Oakland, supra*, 29 Cal.App.5th at p. 710; *Los Angeles Police Protective League v. City of Los Angeles, supra*, 188 Cal.App.3d at p. 12.) The decisions McCormick cites, to the extent they even analyze a section 1021.5 issue, do not hold otherwise. Rather, they considered whether a published opinion had a significant and broad enough benefit, beyond its mere existence, to warrant an award under the statute. (See, e.g., *Early v. Becerra* (2021) 60 Cal.App.5th 726, 739–741; *Samantha C. v. State Dept. of Developmental Services, supra*, 207 Cal.App.4th at pp. 79–80.)

We therefore turn to the substance of *McCormick I*. Our legal analysis in that opinion had two primary parts. First, we concluded that whether CalPERS members are "incapacitated physically or mentally for the performance of [their] duties" as required to be eligible for disability retirement under the PERL (§ 21156, subd. (a)(1)) turns on their "ability to perform their duties for their actual employers, not their ability to perform those duties in the abstract." (*McCormick I*, *supra*, 41 Cal.App.5th at pp. 435, 437.) We relied in part on the 2006 amendment of section 21156 to " 'reaffirm CalPERS'[s] historical practice' " of judging a member's capacity to perform the usual duties required by the member's current employer, not those required by some other CalPERS-covered employer. (*McCormick I*, at pp. 436–437.)

Second, we concluded that "CalPERS cannot deny disability retirement on the basis that a member could perform [the member's] usual duties with an accommodation that was not provided." (*McCormick I*, *supra*, 41 Cal.App.5th at p. 439, italics and some capitalization omitted.) We explained that a member is eligible for disability retirement even if it would be possible to perform the member's usual duties with an accommodation, because the PERL does not condition eligibility on first seeking an accommodation. (*Id.* at pp. 440–441.)

The trial court concluded that *McCormick I* "added to the law" only to the extent it held that a CalPERS member who was "able to work except for a temporary disability that was susceptible to accommodation which did not occur" was eligible for disability retirement. Noting the "environmentally based" nature of McCormick's disability, the court determined that applicants for disability retirement "generally speaking are not going to be able to utilize [*McCormick I*] because it doesn't pertain to the garden[-]variety or run-of-the-

12

mill disability pension cases. By that I mean taking the environmental part of it out of the equation, this decision adds nothing to the body of law that already exists." The court also commented that while a larger group of CalPERS members might be able to rely on the opinion's discussion of the accommodation issue, that discussion was "gratuitous dicta."

The trial court's view of *McCormick I* was too narrow. The benefit a published opinion confers is not limited to its specific holdings or the new law it may make. (See *Robles*, *supra*, 38 Cal.App.5th at p. 204.) "Rather, a 'central function' of the private attorney general statute is ' "to call public officials to account and to insist that they enforce the law," ' " and that purpose is furthered when an opinion illuminates or emphasizes the contours of existing law and requires an agency to follow it. (*Ibid.*)

The two main conclusions we reached in *McCormick I* confer a benefit on a group larger than those CalPERS members who might seek disability retirement in factual circumstances similar to McCormick's. Our opinion not only concluded that McCormick herself was eligible for disability retirement but also emphasized that disability must be judged in light of a member's actual job location and duties and that members need not seek an accommodation to become eligible. Although the latter conclusion was technically dicta because McCormick *did* seek an accommodation (see *McCormick I*, *supra*, 41 Cal.App.5th at p. 441), that does not mean it will be ignored going forward. Rather, the principles we discussed may well affect cases that do not involve environmentally based disabilities like McCormick's.

More broadly, by resulting in an appellate opinion enforcing the PERL, this litigation benefited the general public.[3] Although enforcement of the PERL alone or publication of an opinion alone does not automatically confer a significant benefit on the public, in our view *McCormick I*'s interpretation of section 21156 did. As a result, evidence on the size of the group benefited was not required. (See *Indio Police*, *supra*, 230 Cal.App.4th at p. 543.)

Two decisions inform our conclusion that *McCormick I* conferred a significant benefit on the public. In *Robles*, our colleagues in Division Four held that a significant public benefit resulted from their previous published opinion in an unemployment-benefits case. (*Robles*, *supra*, 38 Cal.App.5th at pp. 196, 203–204.) The prior opinion held that the conduct for which the claimant was fired, attempting "to use his annual employee shoe allowance to buy a pair of shoes for an injured friend," did not " 'support a finding of misconduct within the meaning of section 1256 of the Unemployment Insurance Code.' " (*Id.* at pp. 195–196.) The opinion determined that " 'employee behavior constitutes misconduct for purposes of section 1256 only if it somehow demonstrates culpability or bad faith,' " and there is a presumption that an employee was fired "for reasons other than misconduct, absent written notice from the employer to the contrary." (*Id.* at p. 196.)

*Robles* disagreed with the trial court that a section 1021.5 award was unwarranted because the prior opinion "was fact specific and . . . case law already existed defining misconduct in the unemployment insurance context." (*Robles*, *supra*, 38 Cal.App.5th at p. 204.) By applying existing law that "was

---

[3] CalPERS states that McCormick "does not claim—nor could she—that the general *public* received benefits as a result of her lawsuit." To the extent CalPERS suggests McCormick waived the argument that this litigation conferred a significant benefit on the public, we disagree. Her opening brief repeatedly claims that the public benefited from her lawsuit.

14

being completely disregarded" and "emphasizing the statutory presumption *against* a finding of misconduct," the prior opinion "provided a significant benefit, both to the public generally and specifically to those who might otherwise improperly be denied the unemployment benefits to which they were due." (*Ibid.*)

In *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, the Fifth District Court of Appeal concluded that a published opinion addressing procedural protections afforded to police chiefs under the Public Safety Officers Procedural Bill of Rights Act (POBRA) (§ 3300 et seq.) conveyed a significant benefit on not only police chiefs but "the citizenry of the state." (*Robinson*, at pp. 387, 399; see § 3304, subd. (c).) *Robinson* highlighted a line of decisions "concluding that a peace officer's lawsuit resulting in a published decision clarifying the procedural protections contained in POBRA conferred a significant benefit on the general public or a large class of people." (*Robinson*, at pp. 398–399.) These decisions followed a POBRA case in which the Supreme Court also concluded the significant-benefit requirement was met, explaining, "Since enforcement of [POBRA] should help to maintain stable relations between peace officers and their employers and thus to assure effective law enforcement, [this] action directly inures to the benefit of the citizenry of this state. [Citation.] No one can be heard to protest that effective law enforcement is not a 'significant benefit.' " (*Baggett v. Gates* (1982) 32 Cal.3d 128, 143; *Robinson*, at p. 398.)

Like the statutory schemes at issue in *Robles* and *Robinson*, the PERL conveys important employment-related benefits and protections. "The legislative purpose of public employee pension programs is well-established. [These programs] ' "serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired

15

employees and their dependents." ' [Citation.] Disability pension laws are intended to alleviate the harshness that would accompany the termination of an employee who has become medically unable to perform [the employee's] duties." (*Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1304.) Thus, pension programs "help induce faithful public service." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 325, fn. 4; *Wilmont v. Contra Costa County Employees' Retirement Assn.* (2021) 60 Cal.App.5th 631, 661–662.)

Based on *Robles* and *Robinson*, we conclude that *McCormick I* conveyed a significant benefit on the public. Similar to the opinion discussed in *Robles*, our prior opinion addressed a statutory scheme bearing on employment benefits for millions of people, clarifying existing law and requiring it to be followed. And similar to the opinion discussed in *Robinson*, our prior opinion clarified and protected the rights of employees who serve the public. If a published opinion enforcing police chiefs' procedural rights confers a significant public benefit by " 'assur[ing] effective law enforcement' " (*Robinson v. City of Chowchilla, supra,* 202 Cal.App.4th at p. 398), then a published opinion enforcing the PERL does the same by assuring ongoing public service.

In arguing that the significant-benefit requirement is not satisfied, CalPERS primarily relies on two decisions, *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158 (*PLF*) and *Angelheart v. City of Burbank* (1991) 232 Cal.App.3d 460 (*Angelheart*). Both cases are distinguishable because they did not result in published opinions on the merits of the plaintiffs' claims.

In *PLF*, the plaintiffs obtained a writ of administrative mandate against the California Coastal Commission that struck a permit condition

requiring them to dedicate an easement through their property. (*PLF*, *supra*, 33 Cal.3d at pp. 163–164.) The Commission appealed, but the appeal was dismissed at its request, and the plaintiffs sought appellate attorney fees under section 1021.5. (*PLF*, at pp. 164–165.) The Supreme Court concluded "that the primary effect of the judgment was to invalidate the particular permit condition imposed" based on the lack of evidence to support the Commission's determination. (*Id.* at p. 167.) Therefore, the trial court's judgment "vindicated only the rights of the owners of a single parcel of property" and "in no way represent[ed], for example, a ringing declaration of the rights of all or most landowners in the coastal zone." (*Ibid.*)

In *Angelheart*, the plaintiffs successfully challenged a city ordinance that limited their ability to run a large in-home daycare. (*Angelheart*, *supra*, 232 Cal.App.3d at p. 463.) The trial court awarded them attorney fees under section 1021.5. (*Angelheart*, at pp. 465–466.) The Second District Court of Appeal reversed the award on the basis that the significant-benefit requirement was not met. (*Id.* at pp. 468–470.) It explained, "[T]here is no evidence in the record to support the trial court's conclusion that all of the residents of Burbank seeking child care benefited from the action. In fact, there is no evidence that there was any other person in Burbank, like the [plaintiffs], who sought a permit for more than the 10 children allowed in a family day-care home under the former municipal ordinance. There is no evidence that the [plaintiffs'] action, although successful and involving an important public policy, affected a large class of persons." (*Id.* at p. 467.)

Although the plaintiffs in *PLF* and *Angelheart* obtained favorable judgments, those judgments were not reviewed in a published opinion. Thus, neither case developed or elucidated the law governing the rights at issue for a broader audience. Had McCormick prevailed in the trial court without the

need for *McCormick I*, we might agree there is no evidence that the judgment requiring CalPERS to grant her application for disability retirement significantly benefited a large group of persons. But since her case resulted in a published opinion addressing eligibility for disability retirement under the PERL, we conclude that it conveyed a significant benefit on the public under *Robles* and *Robinson*.

### C. Our Disposition

Having concluded that McCormick's lawsuit conferred a significant benefit on the public, we turn to the appropriate disposition. McCormick argues that the trial court found that she satisfied all the other requirements for an award under section 1021.5, meaning that we may order that she is entitled to attorney fees. The court made comments suggesting it believed the other statutory requirements were satisfied, and CalPERS does not contest that McCormick should be awarded fees if she meets the significant-benefit requirement. Therefore, we reverse the order denying her motion under section 1021.5 and direct the court to enter a new order granting the motion.

As McCormick properly recognizes, the fact that she is entitled to an award under section 1021.5 does not mean she is necessarily entitled to the full *amount* she seeks, which is over $812,000. We express no view on whether that figure is appropriate. Rather, on remand, the trial court shall exercise its discretion to determine the amount of the award. In doing so, it "may legitimately restrict the award to only that portion of the attorneys' efforts that furthered the litigation of issues of public importance." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1226.)

18

## III.
### DISPOSITION

The order denying McCormick's motion for attorney fees under section 1021.5 is reversed.  The matter is remanded with directions to enter an order granting the motion and awarding attorney fees in an amount the trial court shall calculate in the first instance.

_____
Humes, P.J.


WE CONCUR:


_____
Margulies, J.


_____
Swope, J. *


        *Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*McCormick v. CalPERS* A164672

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CARI McCORMICK,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>     Defendant and Respondent. | A164672<br><br>(Lake County<br>Super. Ct. No. CV416903)<br><br>ORDER GRANTING PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on April 3, 2023, was not certified for publication in the Official Reports. After this court's review of appellant's request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

 

 

_____

Humes, P.J.

Trial Court:

Superior Court of the County of Lake

Trial Judge:

Hon. David W. Herrick

Counsel:

Benjamin Karpilow, Meechan, Rosenthal & Karpilow, P.C., for Plaintiff and Appellant

Raymond A. Cardozo, Kathryn M. Bayes, Reed Smith LLP, Elizabeth Yelland, California Public Employees' Retirement System, for Defendant and Respondent

*McCormick v. CalPERS* A164672